Good morning, Your Honors. John Goodman on behalf of plaintiff below and appellant here, Richard Garcia. Your Honors, this is a review of the grant of a summary judgment below. The Federal Rules of Civil Procedure 56C requires the court to consider whether the pleadings, the depositions, the affidavits, and all the other evidence submitted in opposition to the summary judgment raise a triable issue of genuine facts. Now the standard of review in a case like this is a de novo. All facts must be viewed in a light most favorable to Garcia. The evidence of Garcia must be believed and all justifiable inferences must be resolved in his favor. I think you can assume we understand what Rule 56 is. I just think it bears a little stressing those rules because they so favor Mr. Garcia in this particular case. What specific facts are you relying on to raise a genuine issue of fact as to Mr. Garcia's requests to be escorted to the bathroom or allowed to get to use the bathroom? What facts in the record show that he made those requests and they were not complied with? There is a citation in the record to Officer Ragsnick who testified in his deposition that Garcia asked to use the restroom, that a supervisor needed to take him to the restroom, and that Officer Ragsnick notified the supervisor that Mr. Garcia had asked to use the restroom. That's in the record. Now there may be several other pieces which raise a conflict in the evidence, but that one piece of evidence... This is a 1983 case, right? No, your honor. The facts of this case took place on tax day, April 15, 2010. Okay. And summary judgment was granted. No, no, no, no, no. That's not what I said. It's a section 1983 case. Oh, yes, your honor. Okay, now it didn't happen in 1983. I'm sorry. That's even before I was a judge, and now that's a long time ago. I started in 88. So negligence doesn't help you. It's a Federal Tort Claims Act. Yeah, it's a Federal Tort Claims Act case, right? Yes. Don't you have a 1983 component, though? Or do you? No, it's premised on California torts. It's just straight-up Federal Tort Claims Act. Tort Claim Act. Okay. Assault, battery, negligence, and intentional... So negligence does help you. Negligence does help me. And that's what you're arguing, is that there are genuine issues of material fact here as to whether they were negligent. See, there's... This is what I'm trying to get at. See, if it was... If you had a situation under a 1983 action, and somebody just screwed up, they made a mistake. Somebody told somebody, take him to the bathroom, he thought somebody else was doing it. That's negligence. That doesn't get you there, because that's not a constitutional violation. Under the Federal Tort Claims Act, however, negligence is a factor, and is the key factor. And you were arguing, kind of in your brief, we're arguing almost a 1983 case, and... But I think you're really a Federal Tort Claims Act case here. I think I'm trying to stress mostly the battery cause of action, because that's really the crux of this case. All right, so that gets me to my question. You had asserted a number of claims. Negligence, assault, battery, intentional infliction of emotional distress. What claims are you challenging on appeal? All of them. You know, what happened in this case, and I think I've gone over it a lot in the brief, but viewing the evidence in the light most favorable to Garcia, they took a man who's presumed innocent, but he's believed to have committed a crime. They take him. He's a paraplegic. He has no use of his legs whatsoever. They make him sit in his wheelchair in a small confined room. He asked to use the restroom. He is not allowed to use the restroom. They make him sit in that room for nearly 10 hours. The problem was that he couldn't fit in the restroom. No, Your Honor. They either didn't have one or they deliberately withheld it from him. So you indicated that the crux of your claim, as you see it, is a battery, which under California law requires an offensive contact. What is your theory and the materially disputed facts that demonstrate an offensive contact? Intentional act which causes a harmful or offensive contact with the plaintiff's person. The contact here is when you force a man who is just eating lunch in Mexico to sit in his wheelchair for 10 hours, and you don't let him use his restroom. It's inevitable he will have to urinate and defecate on himself and sit in it for hours and hours longer. Then, without allowing him to clean up, they chain him to a gurney, make him lie in his feces while they give him a bumpy ride to a hospital. This is well after 10 hours. Let me just break that down and clarify. So the offensive contact is the handcuffing? No, you have the contact of the feces with his body. Their acts caused that. Do you have a case that would support that theory under California law? I did look for a case regarding those kind of specific facts and it doesn't really exist. I'm just going off the as abhorrent as it appears on its face. I mean, nobody would want to see that happen to anyone. That doesn't appear to me to be a battery under California law. I mean, the chaining, you may have an argument. I don't know. I got to look at that. But just him defecating on himself, as bad as that is, that's something he did. That's not something they did to him, other than to keep him in a space. So that may be another cause of action that you have, but I'm having a hard time seeing that as a battery. Well, let's break it down. Battery is an intentional act which causes a harmful or offensive contact. You're asking us to basically make new law here because you don't have a case that supports that. Well, we have an intentional act depriving him of the restroom for 10 hours. You don't have any cases that support it, correct? I mean, you have a lot of arguments here. I'm just wondering whether you're really firing your gun at the right one. I have not found a case where confining someone so that they were forced to defecate and urinate on themselves and sit in it for hours and then take a bumpy ride. There are many causes of action that support that type of a circumstance, but I'm having a hard time seeing battery as one of them. There are cases that assert, for example, a gentleman standing there with the use of a cane. They don't touch him, but they touch his cane, and he falls when the cane is knocked out. That's a battery. Here you have a physical touching of somebody with something that they have in their hand. Here you have a physical touching that they caused every bit as much as if they threw it at him. Okay, well... Well, it sounds like a tort, but... Is it actionable under any theory? I mean, you're saying it's okay? It's reasonable conduct for the government? Counsel, I didn't suggest that it was okay. Where did you get that? I think I said it sounds pretty abhorrent to me that someone would be left in that condition. That is not saying it's okay. We're talking here about a particularized cause of action under the law that usually requires a physical touching, as my colleague suggested. And so... Well, that's why I was trying to clarify your claims, because these are the claims that you articulated. So I was trying to pin you down on what facts you're relying on so that we can determine whether the court erred in granting summary judgment where there are triable issues of material fact. So that's one issue. What are the triable issues of material fact? And then I have to connect that to the claims that you've asserted in the complaint. There's also the intentional infliction of severe emotional distress cause of action. And in that case, you have to have extreme and outrageous conduct by the government, which we have here, which causes severe emotional distress. Now, there's no question that Mr. Garcia has been a basket case after this. This case really affected him. He has nightmares to this day and can't sleep. Is there a negligent infliction of emotional distress? There is that cause of action in California as well, yes. Does that require some physical harm or some... Well, I think every tort requires there to be damages. I don't think it has to be physical harm. There just has to be damages from negligence. Every state is different. I mean, negligence applies not just in personal injury actions. It applies in property damage. So there has to be some kind of damage and negligence, but it doesn't have to be physical harm. But here, it's undisputed that once he finally got to Alvarado Hospital and his wife was able to clean him up a little bit, peeling the dried excrement off of his body peeled the skin off and caused him to bleed. So you have it established here. I don't even think it's established. It's not even questioned by anybody. I think the basic facts here are undisputable. I think Garcia should almost be entitled to summary judgment, not the other way around. There's no question they kept him in that little room. Another fact regarding the conduct here. It's very different when you're a paraplegic and you're sitting in a wheelchair. You cannot use your legs to hold your body up. All your weight is just sitting on your bottom. Maybe you have a little bit of control with your arms. Try lifting your legs up and do that for 10 hours. It's painful. He was having back pain. Now, the government didn't mind that in this case because it was helpful to them for their interrogation later on. And they used it in their interrogation. There's no question about those facts. After seven and a half hours, they waited seven and a half hours before starting an interrogation. While he's sitting in his feces and urine, in pain from his back, deprived of his medications, then they start interrogating him. It's very clear he asked for help at that point. They give him nothing. They just continue their interrogations. Then they decide to arrest him and chain him to the gurney and bounce him around on the way to the hospital. Why don't you save a little time for rebuttal? Okay. Thank you. Good morning, Your Honor. May it please the Court. Assistant United States Attorney Beth Stratton on behalf of the defendant and appellee, United States of America. Your Honors, I'd first like to address a couple of points raised by my colleague, Mr. Goodman, just to be clear that this is not a Section 1983 case, nor is there a claim by Mr. Garcia for negligent infliction of emotional distress. The claim for negligence, I'm not quite sure what that claim is. The negligence claim, Your Honor. Your Honor, in the district court, Mr. Garcia alleged two bases for his claim of negligence. First of all, he claimed that the government breached its duty to transport Mr. Garcia in a safe manner. Secondly, Mr. Garcia claimed that the government breached a duty to handle him in a safe manner during his interrogation. Now, with respect to the first claim regarding safe transport, an ambulance was called for Mr. Garcia. Mr. Garcia did not, for some reason, want to lie down in the gurney, but would have rather continued sitting in his wheelchair. He asked for a van, a wheelchair-accessible van. But it was within the arresting officer's discretion to determine the method of transport for Mr. Garcia, which he determined the best method of transport. Within his discretion? Maybe it's within his discretion. I don't know at this point, I mean, whether transporting someone who has this condition as a paraplegic, whether transporting that kind of a person in an ambulance cuffed causes injury that it would not cause transporting him in a van. Your Honor, two remarks on that issue. First of all, Mr. Garcia had requested the ability to lay down. So he, in fact, was given that ability when the ambulance came and he placed himself onto the gurney. I thought he requested a van where he would sit up in the wheelchair. Correct, Your Honor, but prior to that, prior when he was having his conversation with Special Agent Beals, he informed Mr. Beals that he would like to lay down. So the ambulance was called and he was able to lay down on the gurney. It was only after the ambulance was called that then he said no, that he wanted to sit up. Now, with respect to the cuffing, Your Honor. So he got on the gurney and then they took him off the gurney and put him back in his wheelchair? No, Your Honor. It's very confusing here. Yes, Your Honor. After it was determined that Mr. Garcia would be arrested, the ambulance was called and Mr. Garcia placed himself on the gurney. All right, so he's on the gurney, right? That's what I just said. It is a gurney. So he was laying down? Yes, he was laying down. Then he got out of the gurney? No, no, Your Honor. He was on the gurney until he arrived at the hospital. So he never did get on, he was never transported in the van in a wheelchair? Correct, Your Honor. All right. Yes? Per his declaration, he says, my leg and arm were handcuffed to the gurney guard rails, which left him, this left me in a very vulnerable position, unable to control my body movement whatsoever, and that causes injuries. Is there evidence in the record that transporting him via van, per his request, which would then allow him to sit in his wheelchair, would not cause the same sort of injuries? There is no evidence in the record to that extent, Your Honor. And, in fact, there is no evidence that Mr. Garcia suffered any sort of injury as a result of being cuffed to the gurney. He never complained that the cuffs were too tight. There were no visible marks on his hand or his wrist. No, that's not what he said, that they were tight. He said being cuffed where he could not raise himself caused him the injury. But there was no injury alleged in the record. What he said, Your Honor, was that he was unable to control his body movements on the bumpy ride from Tecate to the hospital in San Diego. But while it may have been uncomfortable, there's no evidence at all that he, in fact, suffered any physical injury of any sort whatsoever. And, as a matter of fact, when he was assessed in the emergency room at the hospital, he told Dr. Krause, the emergency room physician, that he was not in any pain, that he did not have any complaints, but that he was only a little bit tired. And the medical records that are in the record also show this. Putting, from my perspective, Battery aside for a moment, what about this whole issue of keeping him in a small room for an exorbitant amount of time, eight, ten hours, no use of the bathroom? How do you explain that? Yes, Your Honor. First of all, with respect to the length of the detention, this was out in Tecate, which is a very long distance from San Diego. It's pretty much out in the middle of nowhere. And it did take quite a bit of time for the agents to arrive from San Diego to the port of entry. But if you go over the timeline, there was no delay on their part. Now, with respect to the restroom, there was no denial to Mr. Garcia to use the restroom. That was what I started the question with, and counsel said there was in the record, and it sounded right to me that he had requested to use the restroom, but that there was a problem getting the wheelchair in, and that the guard said to him, we'll have to get a supervisor to help. No, Your Honor, that is not what the record says. Actually, what the record says, first of all, Mr. Garcia testified that he never asked to use the restroom, that he only asked to talk to the supervisor. Officer Ragsack. That's in the record? Yes, that is in the record, Your Honor. That is in the record at Excerpt 62 and again at 92 to 93. Officer Ragsack testified that on one occasion Mr. Garcia stated that he needed to use the restroom but wanted to talk to the supervisor. A supervisor did talk to Mr. Garcia, but Mr. Garcia never asked for assistance to use the restroom. And, in fact, Mr. Garcia is unable to use a restroom without assistance. Now, with respect to whether or not there was an accessible restroom, there is no evidence in the record whatsoever that states that there is no accessible restroom at the port of entry. Officer Ragsack did testify that there was one restroom inside of the security office, which Mr. Hernandez did use because he asked, and that there was also a restroom outside of the security office to which detainees could use if they were accompanied. But, again, Mr. Garcia was never denied the use of the restroom. At most, he only stated on one occasion that he needed the restroom but wanted to talk to a supervisor. And Mr. Ragsack, Officer Ragsack, did provide the supervisor to Mr. Garcia, Officer Catano, but he never, Mr. Garcia never asked Officer Catano to use the restroom. Your Honors, with respect to, I'd like to turn to the battery claim briefly. In the district court, Mr. Garcia argued two bases for his battery claim. Number one, that he grabbed, that Officer Beals grabbed his shoulder and threw him onto the gurney. The district court ruled that that declaration testimony by Mr. Garcia was a sham because it contradicted his deposition testimony where he testified that he was, that Mr. Garcia was in fact never touched by any agent, federal agent, and he in fact put himself onto the gurney. And, in fact, Garcia, in his reply brief to this court on page five, concedes that the court rightfully excluded that testimony as a sham. Secondly, with respect to the cuffing, which we've already addressed to some extent, again, it was within Officer Beals' discretion to restrain Mr. Garcia in a reasonable manner. And, again, there was no- Restrain him from doing what? I beg your pardon, Your Honor? Restrain him from doing what? Well, Your Honor, Mr. Garcia claims that he was not able to move his legs and, therefore, was not a flight risk. However, we need to keep in mind that Mr. Garcia was transported in the ambulance without an accompanying officer in the ambulance. Special Agent Beals was following the ambulance in a car behind. And it was Special Agent Beals' duty to ensure the safety not only of Mr. Garcia but the ambulance personnel. And it is important that Special Agent Beals never underestimate what the potential actions of someone who is under arrest can have. And Mr. Garcia was arrested for carrying a loaded firearm across the border. He had friends and relatives come to the border to meet him and who were also following to the hospital. And it was Special Agent Beals' decision to handcuff Mr. Garcia. And they handcuffed him to the hospital bed, too, because they were afraid he would get up and run out of the hospital? Perhaps not, Your Honor. However, there always is the possibility that he could cause harm to hospital personnel or that others may assist his escape. It certainly was not unreasonable at the time. And, again, there was no harm done to Mr. Garcia by the handcuffing. Your Honors, we would request that because Mr. Garcia did not establish a prima facie case for any of his claims, that the district court judgment be affirmed. Thank you, counsel. Thank you. All right. We'll give you a little extra time. We gave the government an extra couple of minutes. Thank you, Your Honors. First of all, concerning Mr. Garcia wanting to lie down, he had been asking for hours and hours. Mr. Beals, the agent, and a couple other agents didn't arrive until he had been in that little room for seven and a half hours. He had asked repeatedly to use the restroom and to see a supervisor. Wait a minute. Just a minute. Give us a second. Yeah. Where in the record is this? Because she has just cited us to his deposition testimony where he said he never requested to use the restroom. What you're relying on is one excerpt from the record from the defendant, essentially, to try to impeach your own client. It appears. So you keep telling us he repeatedly requested to use the restroom. Where is that in the record? I can only show in the record one time. And that was the one that counsel just discussed where he mentioned that he wanted to use a restroom, but he wanted to talk to a supervisor first and then never requested it of the supervisor. That's in the record. That's inaccurate. Okay. So where is your citation in the record to these multiple times where you just said to us he requested to use the restroom? Not your conversations with him yesterday. I'm talking about in the record. Okay. What Officer Ragsnick says is that Mr. Garcia asked to use the bathroom, asked to use the restroom, and that he was told he needed to ask to see a supervisor. In his deposition, which went on for quite some time, I can only interpret what was going through Mr. Garcia's mind. No, that's not what I asked. He was asked, led through the facts, and at this time did you ask to use the bathroom? No. After he was told by Officer Ragsnick that he had to ask a supervisor, he kept asking to see a supervisor. Now, if Mr. Catano did come up and speak to him, never identified himself as a supervisor. Well, she mentioned she cited to the record where he did. So is she wrong? Assuming he did. I can't say he didn't. He didn't say, I'm the supervisor, what can I do for you? I'm the supervisor you've been asking for. He's just another one of the Border Patrol agents there. And Mr. Garcia, at that point had been told he wanted to see a supervisor. Now, all this establishes is a conflict in the evidence. And I would refer you to the law school thing where if 10 people see the light is red and one guy says the light was green, you have a tribal issue of fact. You have a tribal issue of fact here. He asked to use the restroom, and it's in the record in their Border Patrol agency. Now, you said one, he asked, it's in the record that he asked to use the restroom. And then he was told you have to have a supervisor? Yes. And then you say that nobody ever identified himself as a supervisor? As far as I know, no supervisor ever came. Mr. Garcia did not think a supervisor ever came. If Officer Catano came, it could only be that he didn't say, I'm the supervisor you've been asking for. Counsel cited us to the record where that he did talk to the supervisor. So that's wrong? If that's the case, again, all you have is a conflict in the evidence that must be resolved in Garcia's favor. The one person says the light is green, an appeal that carries the day. Now, are you saying that Mr. Catano did not say he was a supervisor? I don't believe he did. But Mr. Garcia never thought there was a— Are there other times in the record where he asked to see a supervisor? Did he ask to see a supervisor once, or did he ask to see a supervisor on several occasions? I know he asked to see the supervisor on several occasions, the only one I can show you in the record that I was given to do this appeal on that was not excluded by the trial court because there were some contradictions in his deposition is Officer Ragsden's testimony that he asked to use the restroom. It's undisputed he was not allowed to use the restroom. You were not the attorney below? I was not. All right. So that may explain your unfamiliarity with the record. Well, I'm familiar with the record. I'm not familiar with things that aren't in the record. We can only consider what's in the record. Exactly. And given the record, I have that one statement, and I hang my hat on that, and I believe this court must accept that as true under the appellate rules that are applicable to an appeal of a summary judgment. I think Mr. Garcia deserves his day in court. So a couple things I'd like to just mention here. She says there's no denial to use a restroom. Well, it's undisputed he didn't get to use one. It's undisputed he talked to Mr. Beals. You can hear the tape recording. So this is at seven and a half hours in. He talks to Agent Beals. He, again, asks to use a restroom, for sure, from Agent Beals. And what did Agent Beals say in response? He just goes on with his interrogation, ignoring it. There's a tape recording of that. There's a transcript of that in the record. So that seven and a half hours, he asked Agent Beals if he could use a restroom, and he's not allowed to use it still. So then it's at the 10-hour point when he has said, you're getting on that gurney one way or another. He never stated he did not need to use the restroom. She said that I agreed that he had a sham declaration. That's just not the case. I agree there was a conflict in the testimony and the deposition that contradicted the statement in his deposition. His deposition contradicted the declaration. Trial court excluded two statements. I think that was within the trial court's discretion. I don't need those two statements. I have Officer Rags clearly stating he has to use the restroom. We have tape recording and other evidence he asked Agent Beals to use the restroom. It's undisputed he never was allowed to use it. Is that not actionable? The government can do this to a person, confine them in a room, and it's not actionable? I just cannot fathom a civilized society allowing that to happen and not having there be a cause of action for it. That's all I have to say, Your Honors, unless there's any questions. Thank you both very much. The case is argued and submitted.
judges: Reinhardt, Nguyen, Ezra